Sharon R. WILLIAMS, Plaintiff,

v.

PENNSYLVANIA STATE POLICE—
BUREAU OF LIQUOR CONTROL
ENFORCEMENT, et al., Defendants.

No. CIV. A. 99–2128.

United States District Court,
E.D. Pennsylvania.

April 30, 2001.

See also, 108 F.Supp.2d 460.

Brian M. Puricelli, Law Offices of Brian M. Puricelli, Newtown, PA, for plaintiff.

Randall J. Henzes, Office of Attorney General, Philadelphia, PA, for defendants.

## MEMORANDUM

Reed, Senior District Judge.

Defendant Alfred Campbell now moves for summary judgment (Document No. 52) in this civil rights case, seeking a ruling that the evidence could not support a jury finding that he violated the equal protection rights of plaintiff Sharon Williams, and that regardless, he is entitled to qualified immunity. Upon consideration of the arguments and the evidence of record, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the motion will be granted in part and denied in part.

### Background

On a prior motion for summary judgment in this case, the Court ruled that

there remained a genuine issue of material fact as to whether defendant Alfred Campbell violated the right of plaintiff to equal protection through his personal involvement in the decision to place plaintiff on restricted duty in the course of her employment with the Pennsylvania State Police Bureau of Liquor Control and Enforcement ("Bureau"). *See Williams v. Pennsylvania State Police,* 108 F.Supp.2d 460, 472–73 (E.D.Pa.2000). In the months that have passed since this Court rendered that decision, the Bureau terminated plaintiff's employment. Plaintiff then amended her complaint to include Title VII and equal protection claims arising out of that termination, which allegedly flowed directly from the decision to place plaintiff on restricted duty.

Campbell now moves for summary judgment as to the equal protection claim against him, not only as to her termination-related claim, but also as to her claim arising out of her placement on restricted duty. This Court cannot and will not revisit its prior decision to deny summary judgment as to the restricted duty claim. Thus, the sole question this Court will address today is whether summary judgment is appropriate as to plaintiff's claim that Campbell violated her equal protection rights by causing her to be terminated.

### Analysis[1]

■ Campbell's central argument is that there is insufficient evidence linking him to the decision to terminate plaintiff, largely because he was not employed by the Bureau at the time the decision to terminate plaintiff was made. This motion presents an issue that is not often discussed in the civil rights setting; the issue of proximate causation. Although it is not frequently addressed, the element of proximate cause is implicit in 42 U.S.C. § 1983, and thus must be established in order to prove liability.

■ Section 1983 places liability on a person who "subjects, or causes to be subjected" another to a constitutional deprivation. *See* 42 U.S.C. § 1983. This language suggests that there are two ways a defendant may be liable for a constitutional deprivation under § 1983:(2) direct, personal involvement in the alleged constitutional violation on the part of the defendant, or (2) actions or omissions that are not constitutional violations in themselves, but foreseeably lead to a constitutional violation. The Court of Appeals for the Ninth Circuit offered a most cogent discussion of this issue in *Arnold v. International Bus. Machines Corp.,* 637 F.2d 1350 (9th Cir.1981):

> A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.... Moreover, per-

---

1. In deciding a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "the test is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." *Medical Protective Co. v. Watkins,* 198 F.3d 100, 103 (3d Cir. 1999) (citing *Armbruster v. Unisys Corp.,* 32 F.3d 768, 777 (3d Cir.1994)). Furthermore, "summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 250. On a motion for summary judgment, the facts should be reviewed in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

sonal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. *The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.*

*Id.* at 1355 (emphasis added) (quoting *Johnson v. Duffy,* 588 F.2d 740, 743–44 (9th Cir.1978)).

The Court of Appeals for the Third Circuit has not directly addressed this issue of proximate causation in § 1983 cases. Defendant cites *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) for the proposition that a plaintiff may only prevail on a § 1983 claim against an individual defendant if the plaintiff shows that the defendant was personally involved in the actual constitutional violation. The passage from *Rode* upon which defendant relies reads, "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior.*" *Id.* at 1207. As is clear from the quotation, the observations of the court of appeals in *Rode* concerning personal involvement were made in the context of a discussion of plaintiff's theory of liability, not proximate causation. The cases the *Rode* court cited for in support of its "per-

sonal involvement" proposition also dealt only with *respondeat superior* liability, and not with causation. *Respondeat superior* liability and proximate causation are distinct concepts[2] and therefore have distinct analyses. Therefore, I do not believe that the observations of the court of appeals in *Rode* are controlling in this context, where the question is not whether a supervisor could be responsible for the actions of her subordinates, but whether there is a sufficient nexus between the actions of an individual and an alleged constitutional wrong.

Because I can find no controlling law from the Court of Appeals for the Third Circuit on this issue, and because I consider the analysis of the Court of Appeals for the Ninth Circuit in *Arnold* to be persuasive and most consistent with the language of § 1983, I adopt the *Arnold* analysis today and hold that causation by an individual defendant in a § 1983 action may be established in two ways: (1) with evidence of direct personal involvement in the alleged constitutional violation by the defendant, or (2) with evidence that the defendant set in motion a series of acts by others that the defendant knew or reasonably should have known would cause others to inflict the constitutional injury.[3]

■ It is not disputed that Campbell had no direct, personal involvement in the decision to terminate plaintiff. Plaintiff urges liability on the second ground; that Campbell set in motion a series of events that he knew or reasonably should have

---

**2.** I suppose one could argue that *respondeat superior* liability is a spinoff of the concept of proximate cause that focuses on whether a supervisory misstep—such as failing to sufficiently train, monitor, or advise a subordinate—in a sense "caused" an injury. However, *respondeat superior* liability typically arises out of the mere existence of a supervisory relationship, not because of any particular error or causation by a supervisor. This is quite distinct from the proximate cause analy-

sis, which involves a careful assessment of the causal link between an action and an outcome.

**3.** In so holding, I reject defendant's suggestion that the proximate causation analysis in the civil rights setting requires that a defendant be personally involved in the unconstitutional act.

known would cause others to terminate her. The crux of the motion for summary judgment, then, is whether there is evidence from which a reasonable jury could find that Campbell knew or reasonably should have known that his acts ultimately would cause plaintiff's termination.

Plaintiff presents no new evidence on this point. Rather, she relies on the evidence presented on the prior motion for summary judgment, upon which this Court based its conclusion that there was a genuine issue of material fact as to whether Campbell violated her equal protection rights by placing her on restricted duty. That evidence consisted primarily of a memorandum from Campbell memorializing the decision to place plaintiff on restricted duty. (Exh. 4 to Plaintiff's Response to the Motion for Summary Judgment, Memorandum from Alfred Campbell, Dec. 31, 1998.)

Is this evidence enough to convince a reasonable jury that Campbell knew or reasonably should have known that his acts would set the wheels of plaintiff's termination in motion? I cannot so conclude. First, there is no evidence that a decision to place a person on restricted duty in the Bureau is inherently indicative of an intent to terminate that individual's employment. To the contrary, according to a Special Order of the Bureau submitted by plaintiff on the prior motion for summary judgment, restricted duty or "limited duty" is only intended to be used when an employee exhibits a "temporary condition whereby [the employee is] unable to perform all of the mandated tasks for their position classification." (Tab 7 in Vol. II of Exhibits to Plaintiff's Response for the Motion for Summary Judgment, Special Order on Bureau Policy/Procedures Regarding "Limited Duty" Status, May 6, 1988.) There is no suggestion in that Special Order that restricted duty is an interim step typically taken prior to termination; instead it provides an employee an opportunity to retain employment status while recovering from whatever temporary condition prevents her from doing her job. Quite simply, the evidence illustrates that restricted duty is a way to keep a person on the job, not a means to kick them off the job.

Moreover, Campbell's December 31, 1998, memorandum contains no indication that he knew or should have known that a decision to place plaintiff on restricted duty would lead to her termination. Rather, the memorandum reflects that she would remain on restricted duty until her psychotherapist and the State Police Medical Officer released her. Plaintiff suggests that a jury infer that her placement on restricted duty and her termination were all part of a seamless plot on the part of Campbell's to "get her," and that if a reasonable jury could find he was involved in the restricted duty decision, a reasonable jury also could find him responsible for the termination decision. This is simply too large a leap for a reasonable jury to make. Campbell was not employed by the Bureau at the time plaintiff was terminated. Without some evidence suggesting that Campbell contemplated plaintiff's termination at the time he placed her on restricted duty, or that restricted duty was a step typically taken prior to terminating an employee at the Bureau, a reasonable jury could not find that Campbell knew or should have known that placing plaintiff on restricted duty would lead to her termination.

Therefore, I conclude that Campbell is entitled to summary judgment on the issue of whether he denied plaintiff equal protection by setting in motion a series of event that resulted in her termination.

### Conclusion

While the evidence against Campbell is sufficient for plaintiff to survive summary judgment as to whether the decision to place her on restricted duty violated her rights, it is not enough evidence to carry her case to the jury against Campbell for the employer's decision to terminate her. Accordingly, plaintiff may proceed against Campbell on her claim that he violated her constitutional rights by placing her on restricted duty, but she may not proceed on her claim that he violated her rights by causing her termination.

An appropriate Order follows.

### ORDER

**AND NOW,** this 30th day of April, 2001, upon consideration of the motion for summary judgment of defendant Alfred Campbell, former director of the Division of Operations of the Pennsylvania State Police Bureau of Liquor Control Enforcement (Document No. 52), and the memoranda and exhibits appended thereto pursuant to Rule 56 of the Federal Rules of Civil Procedure, and having concluded, for the reasons set forth by the foregoing memorandum, that a reasonable jury could not find from the evidence advanced by plaintiff that defendant caused plaintiff to be terminated in violation of her constitutional rights, **IT IS HEREBY ORDERED** that the motion for summary judgment is **GRANTED** in part, only on her claim that Campbell violated her equal protection rights by causing her to be terminated, and **DENIED** in part, on plaintiff's claim that Campbell violated her equal protection rights through his involvement in the decision to place plaintiff on restricted duty.

**IT IS FURTHER ORDERED** that plaintiff may, at trial, pursue her claim that Campbell violated her equal protection rights by his participation in the decision to place her on restricted duty, but plaintiff is prohibited from claiming or arguing at trial that Campbell is liable in whole or in part for the employer's decision to terminate her.